Hosea, J.;
Ferris, J., and Littlee'ord, J., concur.
The action below was to recover damages for the death of plaintiff’s decedent, caused by alleged negligence of defendants in failing to furnish the decedent with proper and safe appliances to operate a certain car, and also failure of duty in respect of the proper construction of said ear and its machinery, which defects were unknown to the decedent.
The petition alleges a contract between one Fred L. Emmert and the brewing company, joint defendants, for the disposal of “brewers’ grain,” in the carrying out of which contract a car was operated upon the premises of the brewing company, upon a track from the brew house into a terminal shed; and that the decedent was employed to operate said car; that it *562 was the duty of ..defendants to furnish safe appliances and construction, and that they wholly failed to do so, or to inspect same; and that its defects were unknown to decedent. Further, that while decedent was at his accustomed work upon said ear and while applying the brake of said car to check its speed, and, without fault on his part, the brake mechanism broke and gave way, and decedent was crushed, by the car coming into close proximity to the roof timbers of the shed, and was killed.
The co-defendant, Emmert, first denying the allegations of the petition, further says that the decedent was and had been in his employ as foreman for about nineteen years, and for ten years last past as foreman of the work of moving malt to the shed referred to, with the duty to inspect and keep in order all appliances used in said work, and especially said car and appliances, and to report all defects and needed repairs; and to handle, operate and keep the ear in good order; and that he relied upon him for said inspection and careful conduct of the work in question, and he had no knowledge of or reason to suspect any insufficiency or defect of the car, brake or other appliances.
The brewing company admits the employment of decedent by Emmert and repeats, substantially, the allegations of his answer above set forth as its own. It also alleges that the death of decedent was caused by his failure to stop the car at the proper place, and denies any fault or negligence on its own part.
The reply of plaintiff puts in issue the allegations of these answers.
Upon trial of the cause to a jury, in the court below, at the conclusion of plaintiff’s testimony, the court, on motion of defendants, instructed the jury to bring in a verdict for defendants, which was accordingly clone; and this action, together with alleged errors of the court in the admission of testitimony, constituted the basis of the proceeding in this court to set aside the verdict and reverse the judgment thereon.
The testimony introduced by the plaintiff shows that the decedent, Speller, was in the employ of Emmert, an independent contractor engaged in the removal and disposition of the spent malt, or “brewers’ grain,” produced by the brewing *563 company. The appliances used for this purpose were a track about 300 feet long, laid upon the premises of the company, apd a car, substantially in the form of an ordinary railway “gondola” ear, operated thereon — all belonging to the brewing company and used by Emmert.
The track, at the brew house end, was upon a short incline on which the car stood, secured by blocks under the wheels, while receiving its load. From the foot of the short incline the track continued upon a very slight descending grade to an unloading shed, where the rails lvere turned sharply upwards as a terminal “bumper” to bar further progress of the car.
The operating force of the car was gravity solely. Upon knocking away the wheel blocks, the car obtained an initial start sufficient to continue it in motion over the much' slighter grade to its destination, under the regulating control of an ordinary hand-brake operated by the attendant in charge. The empty car was drawn back to the starting point by a rope passed over a windlass at the upper end of the track.
The decedent was the foreman in charge of the' men and appliances used in transporting the grain, and his duty was to inspect appliances, report defects and repairs needed; and to personally operate the car; and had been for nine years engaged in this work. The testimony of bystanders as to the circumstances of the accident showed that the decedent had allowed the heavily loaded car to attain considerable headway until, about 75 feet from the terminus of the track, he attempted to check the speed, when the chain pulled apart, thus rendering the brake useless. The cause of the parting of the chain was clearly shown to be a defective welding of the terminal surfaces of the iron constituting one of the links, allowing the link to open and the chain to part; but considerable expert testimony was introduced tending to show, by comparison óf standards used in the construction of freight cars for ordinary railway service, that the brake chain used upon this ear, being' made of %-iron — that is, links made of iron rod three-eighths of' an inch in diameter — was structurally inadaquate.
Upon the motion for a new trial, in the court below, it was argued — as also at the hearing in this court — that the car being *564 to all intents a railway car, and the %-chain being of lighter material than was proper according to ordinary railway standards, was therefore inadequate; and that this was a defect of construction unknown to the decedent and not discoverable by him in the exercise of ordinary care, because the defect was apparent only by applying scientific principles beyond the knowledge of the ordinary workman, but which the master should have known or could have ascertained by employment of scientific experts and tests.
This argument, however, involves an untenable legal theory. An employer is only bound to use ordinary care with respect to such matters, and his duty requires only the application of ordinary tests. ITe is not bound to employ experts or use the highest tests. Clyde v. Richmond, etc., Railway, 65 Fed., 482.
Moreover, the theory of inadequacy urged by counsel rests upon a wholly fictitious fabric of expert testimony constituting a false premise of the logical syllogism. The conditions and standards of ordinary railway traffic afford no proper basis for expert opinion on the subject.
It is common knowledge, and therefore judicially cognizable, that, in the operation of commercial railways, the grades, curves, variable speeds, frequency and suddenness of stops, and the interaction of cai’s en train, etc., subject the structure of a car and the equipment as a whole and in detail to very great stresses. The construction throughout must necessarily, therefore, possess great strength and resisting power capable of responding to sudden and great emergencies.
In the case in hand, however, the sole function of the brake equipment was that of a mere regulator of a slow and practically uniform speed upon a slight grade and for a very limited distance. Here all the conditions of operation were fixed and invariable and no contingencies were to be anticipated or provided for so long as the car was properly operated. It is reasonably manifest that a mere fraction of the brake-chain strength required for ordinary railway use would suffice here, since the entire function of the brake was to maintain a comparatively slight and uniform pressure upon the wheels to slightly retard the motion of the car against the action of gravity. Con *565 sequently all the expert testimony as to railway freight train standards and opinions based .thereon, were wholly inapplicable and misleading and should have been excluded from the case.
Arnold Speiser and Theodore Horstman, for plaintiff in error.
E. 17. Strong, for defendant in error.
The court below having the same questions before it, upon the motion for new trial, as are presented in the argument in this court, resolved them upon the grounds: (1) that the claim of inadequacy of the chain had no basis, because the testimony showed that the accident was not attributable to that cause, but to a specific defect, namely, an imperfect welding of a link of the chain; (2) that the plaintiff’s evidence, including the res ipsa loquitur of the link itself as an exhibit, showed that the defect had been open and visible for some time prior to the accident and, therefore, of a nature discoverable by inspection, which it was decedent’s duty to make; and (3), that if th'e defect was in fact latent and not discoverable by ordinary care, it fell within the class of assumed risks; and that in either aspect the defendants would not be liable.
The opinion of the court below, citing authorities, is reported in 3 O. L. R., p. 378; and with the views there- expressed we are in entire accord.
The cases of R. R. Co. v. Webb, 12 Ohio St., 475, and Penn. R. R. Co. v. McCurdy, 66 Ohio St., 118, cited in the opinion below are full and complete expositions of the law on the points stated, and govern this ease. What we have said above but affords additional support to the correctness, in our view, of the court’s action in directing a verdict; and as, upon the whole record, we find no error prejudicial to plaintiff, the judgment must be affirmed, and it is so ordered.
Judgment affirmed.